IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ZACHERIAH PAGANO,

      Petitioner,

v.                                                  2:23-cv-00313-JB-LF

ATTORNEY GENERAL FOR THE STATE
OF NEW MEXICO and
GEORGE STEPHENSON, Warden,

      Respondents.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

THIS MATTER comes before the Court on Zechariah Pagano's[1] pro se Petition Under 28

U.S.C. § 2254 for a Writ of Habeas Corpus, filed on April 11, 2023. Doc. 1. Respondents filed

their answer on June 5, 2024. Doc. 11. Mr. Pagano filed an untimely reply on July 5, 2024,

accompanied by a motion to appoint counsel.[2] Doc. 13. The Honorable District Judge James

Browning referred this case to me to pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct

hearings, if warranted, and to perform any legal analysis required to recommend to the Court an

---

[1] Mr. Pagano appears to spell his name as it appears here, *see* Doc. 1 at 1. Elsewhere, including on the docket and in briefing, it is spelled "Zacheriah." I defer to Mr. Pagano's spelling of his own name.

[2] Because Mr. Pagano is an inmate, he receives court documents by mail and therefore is entitled to an additional three days to file his reply. *See* FED. R. CIV. P. 6(d). Mr. Pagano's reply would otherwise have been due June 19, 2024, and was instead due June 24, 2024, the Monday following the three-day allowance. *See* FED. R. CIV. P. 6(a)(1)(c). Mr. Pagano also benefits from the prisoner mailbox rule, under which an inmate's pleadings are deemed filed as of the date on which they are deposited into the appropriate prison mailing system. *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988); *United States v. Warner*, 54 F.3d 788, 1995 WL 307586, at *2 (10th Cir. 1995) (unpublished decision) (holding that "prisoner mailbox rule" is applicable to filings in district court proceedings). However, nothing in Mr. Pagano's reply indicates that it was deposited on or before June 24, 2024. *See* Doc. 13. His reply was filed on July 5, 2024, and postmarked on July 2, 2024. *See id.* at 1, 5. I therefore do not consider Mr. Pagano's reply.

ultimate disposition of the case. Doc. 3. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Mr. Pagano's petition with prejudice.

**I.    Background Facts and Procedural Posture[3]**

At around 8:30 AM on the morning of Sunday, October 23, 2016, eight-year-old A.J.,[4] hearing noises in the garage of her home and thinking that her father might be home early from his job in Texas, unlocked and opened the inside garage door.[5] Doc. 12-1 at 176; Doc. 12-2 at 168. Seeing Zechariah Pagano standing in the garage in a black hoody, she screamed and curled into a ball on the floor. Doc. 12-2 at 168–70. Mr. Pagano walked into the home, stepping over A.J. and prompting her sister L.J. to scream as well. *Id.* at 169.

Ms. Johnson, showering at the time, heard her daughters screaming and, wrapping herself in a towel, ran out of the bathroom and through her bedroom to see what was happening. Doc. 12-1 at 176–77. As she exited her bedroom, she saw a stranger—Mr. Pagano—running towards her, holding a gun,[6] and yelling a profanity. *Id.* at 177. Mr. Pagano pointed his gun at Ms. Johnson's face, with his finger on the trigger, and twice struggled to cock the gun. *Id.* at 179, 218. When he cocked it a third time, apparently successfully, 13-year-old M.J. attempted to

---

[3] Mr. Pagano provides a very different account of the incident underlying this case. In short: Mr. Pagano met Ms. Johnson through a telephonic chat line and had a sexual encounter with her in her car, after which Ms. Johnson drove home and left him in her car with the keys while she showered. Mr. Pagano dozed off, woke up in the car, and entered Ms. Johnson's home through the garage to see what was taking so long. Once in the house, he heard a gunshot and fled, afraid he had been hit; in a panic, he drove off in Ms. Johnson's car, which already contained her purse. *See* Doc. 12-4 at 105–26.

[4] Although the children were named at trial, the Court uses their initials here to protect their privacy.

[5] At this time, Thomas Johnson worked a two-week-on, two-week-off schedule at an oil field in Texas and was due home two days after this incident. Doc. 12-2 at 139; Doc. 12-3 at 59.

[6] The jury did not unanimously find that Mr. Pagano used a firearm, *see* Doc. 11-1 at 34–39, 42–43, and the relevant firearm was never found, Doc. 12-4 at 47.

wrest the gun from him; the gun went off by M.J.'s ear, causing her to fall to the ground in pain but otherwise harming no-one. *Id.* at 179, 183; Doc. 12-2 at 203–05; Doc. 12-3 at 4–6. Mr. Pagano then gathered Ms. Johnson, her five children, and her father-in-law[7] in the living room and directed them to shut the curtains and doors. *Id.* at 183–84. Mr. Pagano seems to have paced aimlessly around the room for some time, talking and yelling at Ms. Johnson and others and pointing his gun at each member of the family, including a six-month-old child, as they caught his attention. *Id.* at 185–90; Doc. 12-2 at 77. Eventually, he demanded Ms. Johnson's money and jewelry; when rebuffed, he tried to grab a laptop and iPad but was shooed off by Ms. Johnson. Doc. 12-1 at 190–91. Finally, after Ms. Johnson asked him what he wanted and told him to leave, Mr. Pagano asked where Ms. Johnson's car keys were. *Id.* at 191.

Ms. Johnson told Mr. Pagano that her keys were in her room. *Id.* at 191. Mr. Pagano grabbed her by the arm and, still brandishing his gun, walked her to her room, where she shook off his hand. *Id.* at 191–92; Doc. 12-2 at 113–14, 154–55. Ms. Johnson tried to remove her car key from her key ring but didn't manage to do so before Mr. Pagano grabbed her keys and yanked her purse from her. Doc. 12-1 at 192–93; Doc. 12-2 at 118–19. Ms. Johnson, still holding a towel around herself, ran after him and tried to grab her purse again, first in the living room and then in the kitchen. *Id.* at 193. In the kitchen, Mr. Pagano shoved her off, opened the garage door, and drove off in Ms. Johnson's Ford Explorer. *Id.* at 193–94, 199; Doc. 12-2 at 122–23.

Mr. Pagano originally was tried on thirteen counts in the Thirteenth Judicial District Court of New Mexico in September 2017. *See* Doc. 11-1 at 1–3. On October 15, 2018, after a mistrial and a second five-day trial on a subset of the original charges, the jury found Mr. Pagano

---

[7] Ms. Johnson's father-in-law, Edward, suffers from dementia and was wheelchair-bound at the time of this incident. Doc. 12-3 at 76.

guilty of second-degree kidnapping and the unlawful taking of Ms. Johnson's Explorer. Doc. 11-1 at 4, 33, 40. On March 6, 2019, Mr. Pagano was sentenced to 26 ½ years of incarceration, including a 16-year enhancement as a habitual offender. Doc. 11-1 at 44–46. Mr. Pagano filed a motion to reconsider sentence, which was denied. Doc. 11-1 at 50–54.

Mr. Pagano appealed on July 29, 2019. *Id.* at 55. In his brief-in-chief, he raised the following issues: (1) his restraint of April Johnson was merely incidental to the uninstructed crime of simple robbery and therefore cannot be punished as kidnapping, *id.* at 118–25; (2) because his restraint of April Johnson to obtain her car keys and his unlawful taking of her vehicle were unitary conduct, the double jeopardy clause of the Fifth Amendment prohibits multiple punishments for kidnapping and unlawful taking, *id.* at 125–33; and (3) retrial was required because the trial court failed to instruct the jury that they must find criminal intent to convict Mr. Pagano of unlawful taking of a motor vehicle, *id.* at 133–36.

On July 25, 2022, the New Mexico Court of Appeals ("NMCA") affirmed the lower court in an unpublished memorandum opinion. *Id.* at 168–80. Mr. Pagano petitioned the New Mexico Supreme Court for certiorari, raising the same three issues. *Id.* at 181–95. On September 9, 2022, certiorari was denied. *Id.* at 196.

## II.   Mr. Pagano's Claims

Mr. Pagano raises three arguments in his pro se petition:

1. The restraint of April Johnson was merely incidental to the uninstructed crime of simple robbery and therefore cannot be punished as a kidnapping;

2. The double jeopardy clause of the Fifth Amendment prohibits multiple punishments for kidnapping and unlawful taking of a motor vehicle because the two offenses were committed through unitary conduct; and

3. The failure of the state trial court to issue an instruction on criminal intent regarding unlawful taking of a motor vehicle constituted fundamental error and requires retrial on that charge.

*See* Doc. 1 at 2–3.

Because Mr. Pagano is a pro se litigant, the Court construes his complaint liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nonetheless, for the reasons explained below, I find that none of these claims have merit. I therefore recommend that the Court deny Mr. Pagano's petition with prejudice.

## III.    Federal Habeas Claims under the AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry. The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id.* Therefore, habeas relief under § 2254(d)(1) may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id*. at 76.

Under AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2)

must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state's highest court offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

IV.   **Analysis**

A.  **The New Mexico Court of Appeals did not apply federal law objectively unreasonably by finding sufficient evidence to support Mr. Pagano's kidnapping conviction.**

In his first claim, Mr. Pagano argues that "[b]ased on the jury's findings, the kidnapping restraint in this case is merely incidental to the uninstructed crime of simple robbery, and therefore cannot be punished as a kidnapping." Doc. 1 at 6. In light of Mr. Pagano's brief-in-

chief before the NMCA, Doc. 11-1 at 105–37, and the NMCA's corresponding opinion, *id.* at

168–80, I understand the true nature of this argument to be that insufficient evidence supported

the jury's finding that, beyond a reasonable doubt, Mr. Pagano's restraint of Ms. Johnson was

not "slight, inconsequential, or merely incidental to the commission of Armed Robbery," and

that the NMCA applied federal law objectively unreasonably by finding otherwise. *See* Doc 11-1

at 170. Mindful of the very high bar that federal law imposes on § 2254 petitioners who

challenge the sufficiency of evidence supporting a conviction,[8] I recommend that the Court

dismiss this claim with prejudice.

      The Due Process Clause of the Fourteenth Amendment "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In other words, "no

person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—

defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the

existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). When

examining the sufficiency of evidence, the relevant question for a court "is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319

(emphasis in original). Both circumstantial and direct evidence are relevant, *see Lucero v. Kerby*,

133 F.3d 1299, 1312 (10th Cir. 1998*)*, and under *Jackson*, circumstantial evidence alone may be

---

[8] Claims of insufficient evidence "face a high bar in federal habeas proceedings because they are
subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *see
also Meek v. Martin*, 74 F.4th 1223, 1252 (10th Cir. 2023) (explaining the two layers of
deference). One need only examine the sympathetic facts of *Cavazos v. Smith*, 565 U.S. 1
(2011), to see how high this bar is set.

sufficient to uphold a conviction, *see Meek v. Martin*, 74 F.4th 1223, 1252 (10th Cir. 2023) (upholding a murder conviction in a case "decided on purely circumstantial evidence").

The NMCA determined that sufficient evidence supported the jury's finding that Mr. Pagano's restraint of April Johnson was not merely incidental to armed robbery. Doc. 11-1 at 169–72. The question for this Court is whether the NMCA's determination so far departs from the standard articulated in *Jackson* that it constitutes an "objectively unreasonable" application of federal law. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). I find that it does not.

Federal courts look to state law to discern the substantive elements of the criminal offence. *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under New Mexico law, "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Moreno-Ortiz*, 2022-NMCA-059, ¶ 10, 517 P.3d 959, 962 (internal citations omitted). At trial, the jury was instructed that, to find Mr. Pagano guilty of kidnapping, the State had to prove beyond a reasonable doubt that:

1.  Mr. Pagano restrained or confined April Johnson by force or intimidation;

2.  Mr. Pagano intended to make Ms. Johnson move from one room to another against her will for the purpose of making her retrieve her purse, for the purpose of Mr. Pagano taking it;

3.  The restraint or confinement of Ms. Johnson was not slight, inconsequential, or merely incidental to the commission of armed robbery;

4.  This happened in New Mexico on or about the 23rd day of October, 2016.

*See* Doc. 11-1 at 170.

Mr. Pagano, arguing that the restraint was merely incidental, challenges the NMCA's finding that sufficient evidence supported the jury's finding on the third element of the

instructions. Doc 1 at 6. Mr. Pagano does not further elaborate this argument in his habeas

petition; however, even considering the argument presented to the NMCA in his brief-in-chief, I

cannot find that the NMCA's application of *Jackson* was objectively unreasonable. To

summarize that argument: Mr. Pagano contended that New Mexico caselaw forecloses a

conviction for kidnapping when the acts that supported the conviction are predictably and

incidentally involved in another charged crime, such as assault, murder, or robbery. Doc. 11-1 at

118–20 (citing, *inter alia*, *State v. Trujillo*, 2012-NMCA-11, 289 P.3d 238). He argued that,

although he was not convicted of armed robbery by the jury, the restraint for which he was

convicted "was clearly done as part of a robbery and ended as soon as the robbery did," *id.* at

123, did not subject Ms. Johnson to a substantially greater risk of harm than the robbery itself,

and was therefore merely incidental to the robbery and not grounds for a kidnapping conviction,

*id.* at 122–25.

> Rejecting this argument, the NMCA concluded that:
>
> the restraint used to accomplish the kidnapping . . . was separate and distinct from
> the robbery because, once [Mr. Pagano and Ms. Johnson] got to the bathroom, the
> kidnapping was complete. [Mr. Pagano] then let go of [Ms. Johnson's] arm and
> used additional force to commit the robbery. . . . [T]here was sufficient evidence
> of restraint, independent of the force used during the robbery, to support [Mr.
> Pagano's] kidnapping conviction.

*Id.* at 171–72. The NMCA provided no citations to the factual record in this part of its opinion.

Nevertheless, having reviewed the record, I agree that these facts reflect the trial record and, at

the very least, provide sufficient evidence such that it was not objectively unreasonable for the

NMCA to find that a rational jury could find beyond a reasonable doubt that Mr. Pagano's

restraint was not merely incidental.[9]

---

[9] Although the NMCA did not directly apply *Jackson*, it applied a state law standard that is
"essentially the same standard as set out in *Jackson*." *Riggs v. Williams*, No. 97-cv-1001 BB/LS,

Under New Mexico law, as interpreted by the NMCA in its opinion, a restraint is not incidental to a subsequent crime if "there is an identifiable point at which the kidnapping is completed, and the defendant uses additional force to commit [the subsequent] crime . . . ." Doc. 11-1 at 172 (citing *State v. Sena*, 2020-NMSC-011, ¶ 39, 470 P.3d 227, 240); *see also Williams v. Trammell*, 782 F.3d 1184, 1195 (10th Cir. 2015) ("The Supreme Court has 'repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.' ") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)). Ms. Johnson's testimony provided evidence from which the jurors rationally could have concluded that the kidnapping in this case was complete before additional force was used to commit a robbery. Ms. Johnson testified that Mr. Pagano grabbed her arm and led her at gunpoint into her room to retrieve her keys. *See* Doc. 12-1 at 191; Doc. 12-2 at 113–14, 154–55. When they reached her room, Ms. Johnson pulled her arm away from Mr. Pagano and went to take her keys out of her purse. Doc. 12-1 at 192. The jury could rationally have inferred that the kidnapping was complete when Ms. Johnson freed her arm from Mr. Pagano's grasp. Thereafter, Ms. Johnson and Mr. Pagano engaged in a forceful tug-of-war over the purse, which ended when Mr. Pagano shoved Ms. Johnson and exited into the garage. *See* Doc. 12-1 at 193; Doc. 12-2 at 118, 122. The jury likewise could have rationally concluded that the robbery of Ms. Johnson's purse involved force beyond the force used to kidnap her. Therefore, it was not objectively unreasonable for the NMCA to find that sufficient evidence supported the jury's finding that Mr. Pagano was guilty of kidnapping Ms. Johnson. I recommend that the Court dismiss this claim with prejudice.

---

2000 WL 36739920, at *4 (D.N.M. May 10, 2000); *see* Doc. 11-1 at 169–170; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (state court need not cite Supreme Court caselaw).

**B. Mr. Pagano's convictions for kidnapping and unlawful taking of a motor vehicle were supported by separate conduct and did not implicate double jeopardy.**

In his second claim, Mr. Pagano argues that "[t]he Double Jeopardy Clause [of the Fifth Amendment] prohibits multiple punishments for kidnapping and unlawful taking of a motor vehicle [because] A) the offenses were committed through unitary conduct [and] B) the legislature did not intend to punish these offenses separately." Doc. 1 at 2. The NMCA, reviewing this argument, found that these offenses were not conducted through unitary conduct and therefore did not consider legislative intent. Doc. 11-1 at 172–75. I find that the NMCA's conclusion was not an objectively unreasonable application of federal law, and I therefore recommend that the Court dismiss this claim.

"[T]he Fifth Amendment guarantee against double jeopardy . . . consists of three separate constitutional protections"; relevant here is its protection "against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). "[Federal] double jeopardy analysis provides 'that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not.' " *United States v. Raymer*, 941 F.2d 1031, 1043 (10th Cir. 1991) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). New Mexico courts apply this standard—the "*Blockburger* test"—as the second element of a two-part test to discern whether a petitioner has suffered multiple punishments for the same offense. *See Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 13, 810 P.2d 1223, 1233. In the first part of this test, New Mexico courts "address the question that Supreme Court precedents assume to be true: whether the conduct underlying the offenses *is* unitary . . . ." *Id.* (emphasis added). Although federal courts do, at times, conduct similar

analyses, I am aware of no clearly established federal law that controls such analysis. *See, e.g.,*

*Garrett v. U.S.*, 471 U.S. 773, 788-89 (1985) (continuing criminal enterprise "involved incidents

of conduct wholly separate" from other conduct); *Blockburger*, 284 U.S. at 301–03 (additional

sale of drugs after a first sale had been "consummated" was "separate and distinct" even though

close in time).

In its analysis of this claim, the NMCA concluded that the conduct that supported Mr.

Pagano's conviction for kidnapping was separate and distinct from the conduct that supported his

conviction for an unlawful taking of a motor vehicle. Doc. 11-1 at 174–75. Specifically, the court

reasoned that Mr. Pagano's kidnapping of Ms. Johnson "was complete when [he] restrained or

confined [her], by grabbing her arm and going to the bedroom, with the intent to take [her]

purse" and "occurred before [he] took possession of [her] vehicle and even before [he] took [her]

purse and car keys." *Id.* at 174. The court concluded on this basis that these convictions did not

result in double jeopardy, and therefore the NMCA did not reach the *Blockburger* test. *Id* at 175.

Neither the court's analysis nor its decision to forego the *Blockburger* test unreasonably

applied clearly established federal law. As discussed above, no federal law controls the court's

unitariness analysis, and the underlying offenses are defined by state law. Likewise, although no

single federal test mirrors New Mexico's, it is patently true under federal law that Double

Jeopardy "has no application in cases in which two counts are based on two distinct sets of

conduct." *United States v. Benoit*, 713 F.3d 1, 16 (10th Cir. 2013) (internal quotation marks and

citation omitted). I therefore recommend that the Court dismiss this claim with prejudice.

### C. The trial court's failure to instruct the jury on criminal intent did not deprive Mr. Pagano of a fair trial and due process of law.

In his final claim, Mr. Pagano argues that "[t]he trial court's failure to issue an instruction

on criminal intent constituted fundamental error and requires retrial on the charge of unlawful

taking of a motor vehicle." Doc. 1 at 9. Mr. Pagano argued this issue before the NMCA

exclusively as a matter of state law and therefore has not exhausted his federal claim on this

issue. *See* Doc. 11-1 at 133–36; *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). I

nonetheless consider this claim on the merits because I believe this is the most efficient way to

fairly dispose of it.[10]

      The requirements for federal habeas relief on an erroneous jury instruction present a

nearly insurmountable obstacle that Mr. Pagano does not overcome. Such claims provide no

basis for federal habeas relief unless the trial court's error was "so fundamentally unfair as to

deprive the petitioner of a fair trial and due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340,

1357 (10th Cir. 1997) (internal quotation marks and citation omitted). "The question . . . is not

whether the [error] is 'undesirable, erroneous, or even universally condemned,' but whether the

instruction so infected the trial that the resulting conviction violates due process." *Maes v.*

*Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154

(1977)). The omission of a jury instruction during Mr. Pagano's trial does not rise to this level.

---

[10] Under Tenth Circuit precedent, a district court is not authorized by § 2254 to consider some claims on the merits and dismiss others without prejudice. *See Moore v. Schoeman*, 288 F.3d 1231, 1235–36 (10th Cir. 2002). Instead, "[w]hen a district court is presented with a petition containing both exhausted and unexhausted claims, . . . it can do one of four things: (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit." *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (internal quotation marks and citations omitted) (quoting *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir.2009)). If Mr. Pagano's petition were dismissed, even without prejudice, AEDPA's one-year statute of limitations would foreclose a future petition. *Cf. Rhines v. Weber*, 544 U.S. 269, 272–73 (2005). Therefore, and given the clarity of the law relevant to this claim, it is appropriate to consider it on the merits.

A jury instruction on criminal intent should have been, but was not, provided as part of the jury instructions for unlawful taking of a motor vehicle. *See* Doc. 11-1 at 24; NMRA, Crim. UJI 14-141. Although this omission is undoubtedly error, it did not deprive Mr. Pagano of due process. The proper instruction directs jurors that "[w]hether the defendant acted intentionally may be inferred from all of the surrounding circumstances," and the record in this case is "replete with overwhelming evidence" that Mr. Pagano intentionally took Ms. Johnson's vehicle. NMRA, Crim. UJI 14-141; Doc. 11-1 at 178–79 (NMCA's opinion on analogous state law claim). Indeed, Mr. Pagano, despite offering a radically different account of the incident underlying this case, testified that after he fled Ms. Johnson's house, he "jumped in her vehicle," put it in reverse, pressed the brake button twice, started the vehicle, reversed out of the driveway, "and took off." Doc. 12-4 at 125–26. There is little doubt that the jury, properly instructed, would have found that Mr. Pagano acted intentionally when taking Ms. Johnson's car. The omission of a jury instruction on criminal intent was therefore not "so fundamentally unfair as to deprive [Mr. Pagano] of a fair trial and due process of law." *Nguyen*, 131 F.3d at 1357. I recommend that the Court dismiss this claim with prejudice.

### D.  The interests of justice do not require appointment of counsel for Mr. Pagano.

Alongside his reply, Mr. Pagano submitted on July 5, 2024, a motion to appoint counsel. Doc. 13 at 4. In this motion, he requests that the Court appoint counsel because his arguments have merit and because he is unfamiliar with the legal system and has limited access to legal resources. *Id.* There is no constitutional right to counsel in habeas proceedings. *See Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). Unless an evidentiary hearing is held, the decision to appoint counsel is left to the discretion of the Court, which should be guided by factors including "the merits of the litigant's claims, the nature of the factual issues raised in the claims,

the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); *see Engberg v. Wyoming*, 265 F.3d 1109, 1122 (10th Cir. 2001); *Gash v. Milyard*, No. 09-cv-598 MSK/CBS, 2009 WL 2391270, at *2 (D. Colo. Aug. 4, 2009); 18 U.S.C.A. § 3006A(a)(2)(B) (Court may appoint counsel for financially eligible person seeking relief under § 2254 "if the interests of justice so require"). As detailed above, Mr. Pagano's claims require him to overcome high obstacles and they do not appear to have merit. The appointment of counsel would not affect the outcome of this case, and I therefore recommend that the Court deny Mr. Pagano's motion to appoint counsel.

## V.    Recommendation

Mr. Pagano does not show that the New Mexico Court of Appeals was objectively unreasonable in any application of federal law during its consideration of his state habeas petition. I therefore recommend that the Court deny Mr. Pagano's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) and his Motion to Appoint Counsel (Doc. 13 at 4), and that the Court dismiss this case with prejudice.

## VI.    Certificate of Appealability

Lastly, I address whether Mr. Pagano is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if Mr. Pagano "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Mr. Pagano has failed to make this showing. I therefore recommend that the Court deny Mr. Pagano a certificate of appealability.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.

Laura Fashing
United States Magistrate Judge

17